627 So.2d 741 (1993)
STATE of Louisiana, Appellee,
v.
Lee Cizer BLACK, Appellant.
No. 25,527-KA.
Court of Appeal of Louisiana, Second Circuit.
December 1, 1993.
*743 Indigent Defender Office by John M. Lawrence, Richard E. Hiller, Shreveport, for appellant.
Richard Ieyoub, Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Hugo A. Holland, Jr., Tommy J. Johnson, Asst. Dist. Atty., Shreveport, for appellee.
Before SEXTON, NORRIS and VICTORY, JJ.
VICTORY, Judge.
Lee Cizer Black was found guilty as charged of simple burglary of an inhabited dwelling, and sentenced as a second felony offender to eight years at hard labor. On appeal he complains that the evidence adduced at trial was insufficient to support a conviction and that the trial court erred in issuing sentence. For the reasons given, we affirm the conviction, vacate the sentence, and remand for resentencing.

FACTS
During the early morning hours of October 2, 1992, Anna Mae Richardson's barking dogs drew her attention to a neighboring home at 7226 Liberty Street, Shreveport, Louisiana. Upon investigating, she noticed three men lurking around a shed in the backyard of the home. She also noticed that the three men crouched down, as if trying to hide, when an oncoming automobile shined its lights upon them. After the car passed, two of the men left, carrying either a sack or another object which Richardson could not clearly identify.
Richardson, who lived at 7222 Liberty Street, was a personal acquaintance of Sandra Law, who was renting the home at 7226 Liberty Street and was in the process of moving out. Upon observing the suspicious activity at the residence, Richardson reached Law at her mother's house by telephone. Law informed Richardson that no one was supposed to be in the house. At Law's request, Richardson called the Shreveport Police Department to report the incident.
When Richardson returned from making the telephone calls, the lights in the kitchen at 7226 Liberty Street, which had previously been off, were on; and she saw a black man removing curtains from the kitchen window.
Shortly thereafter, the police arrived. After conducting a search of the house, they found the defendant, Lee Cizer Black, lying on the floor in a back bedroom acting as if he were asleep. He was arrested and charged with simple burglary of an inhabited dwelling. After trial, a jury convicted the defendant as charged.
The defendant filed a motion for Post-Verdict Judgment of Acquittal, which was denied by the trial court. Therein, the defendant claimed that his conviction should be set aside because the evidence was insufficient to prove beyond a reasonable doubt that: (1) the house at 7226 Liberty Street was inhabited at the time of the incident; (2) the defendant's entry into the house was unauthorized; and (3) at the time of entry, the defendant intended to commit either a felony or a theft.
After a sentencing hearing, the defendant was found guilty of being a second felony *744 offender. He was sentenced to eight years at hard labor, the first year without benefit of probation, parole or suspension of sentence. The defendant filed a Motion to Reconsider the sentence imposed as excessive, claiming that in deviating from the sentence recommended by the guidelines grid, the trial court improperly considered certain aggravating circumstances, without considering related mitigating factors. The trial court denied the motion to reconsider.
Defendant appeals, complaining that the trial court erred in denying the Motion for Post-Verdict Judgment of Acquittal and the Motion to Reconsider Sentence.

DISCUSSION

SUFFICIENCY OF THE EVIDENCE
In the Motion for Post-Verdict Judgment of Acquittal, the defendant alleged that the prosecution did not present evidence sufficient to support the conviction. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); and State v. Washington, 606 So.2d 838, 841 (La.App. 2d Cir.1992), writ denied, 612 So.2d 56 (La. 1993). The Jackson standard, now codified as part of LSA-C.Cr.P. Art. 821, is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. Washington, supra.
LSA-R.S. 14:62.2 defines simple burglary of an inhabited dwelling as "... the unauthorized entry of any inhabited dwelling, house, apartment or other structure used in whole or in part as a home or place of abode by a person or persons with the intent to commit a felony or theft therein...." In order to convict an accused of this crime, the prosecution must prove three essential elements, namely, that: (1) there was an unauthorized entry; (2) the structure was inhabited at the time of entry; and (3) the defendant intended, at the time of entry, to commit a felony or theft.
To satisfy the unauthorized entry element, the prosecution must show that the defendant did not have permission to enter the house. Law testified, unequivocally, that she did not give the defendant permission to enter her house, and that she did not give anyone permission to remove things from her house. She clearly still had control of the premises. The unauthorized entry element has been satisfied.
To satisfy the intent element, the prosecution must show that the defendant had the specific intent to commit a felony or theft at the time of his unauthorized entry. Specific intent, being subjective in character, need not be proven as a fact and may be inferred from the circumstances of the transaction. State v. Burns, 471 So.2d 949, 953 (La.App. 2d Cir.1985). Using an inference to prove an essential element of the crime triggers the use of the circumstantial evidence rule of LSA-R.S. 15:438. State v. Jacobs, 504 So.2d 817 (La.1987). As an evidentiary rule, LSA-R.S. 15:438 restrains the fact finder, as well as the reviewer on appeal, to accept as proven all that the evidence tends to prove and then to convict only if every reasonable hypothesis of innocence is excluded. Whether circumstantial evidence excludes every reasonable hypothesis of innocence presents a question of law. State v. Shapiro, 431 So.2d 372, 384 (La.1982); State v. Hammontree, 363 So.2d 1364, 1373 (La. 1978).
The circumstantial evidence rule of LSA-R.S. 15:438 does not establish a stricter standard of review than the more general Jackson standard; but, a hypothesis of innocence that is sufficiently reasonable and strong must necessarily lead a rational fact *745 finder to entertain a reasonable doubt about guilt. State v. Sutton, 436 So.2d 471 (La. 1983); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
Richardson recalled seeing three men lurking near the neighbor's shed, and stated that one of the men appeared to be trying to break into the shed. After telephoning Law and the Shreveport Police Department, which she estimated took approximately five to ten minutes, Richardson saw a man in the house taking down curtains. The other two men walked away, and one of them was carrying a sack or other object. Law testified that property was missing from the house, and that no one was authorized to enter the house. It is reasonable to infer from these circumstances that the man seen in the house taking down the curtains intended to steal them, and that this was his intent when he entered the house.
Shreveport police officers arrived fifteen to twenty minutes after Richardson telephoned the department. They discovered the defendant in a back bedroom acting as if he were sleeping. In light of the short period of time between Richardson's initial observation of the three men lurking near the shed and the discovery of the defendant lying in the back bedroom, the jury could have reasonably inferred that the defendant was the man that Richardson saw removing the curtains in the kitchen. It is highly unlikely that the house at 7226 Liberty Street would have been the subject of two separate unauthorized entries, by the defendant and another man, on the same night, at the same time.
Defendant claims the evidence fails to exclude a reasonable hypothesis of innocence, namely that he entered the house to seek refuge and to sleep. Relying on Jacobs, supra, he argues that mere presence and hiding are insufficient to indicate an intent to steal. The case at bar is distinct from Jacobs in that there is additional direct evidence that the man in the house was taking down curtains which did not belong to him. Defendant also cites State v. Jones, 426 So.2d 1323 (La.1983), wherein the court found a reasonable hypothesis of innocence when a "drunk" or "sick" intruder claimed he entered a house to get help for his illness. Again, the case before us is different in that there was no evidence presented to reasonably show that defendant was in the house due to illness or intoxication, or the need to sleep-off any intoxication. Finally, defendant relies upon State v. Marcello, 385 So.2d 244 (La.1980), wherein the defendant entered a public building to use soap and water to clean up. The court found no proof of intent to steal or commit another felony; however, nothing was missing, except soap and paper towels. In this case, clothing and curtains were missing.
The defendant's hypothesis of innocence, that he was seeking refuge and sleep, is not sufficiently reasonable and strong under these circumstances to have led the jury to entertain a reasonable doubt about guilt. Based upon the direct and circumstantial evidence presented, we find that the intent element has been satisfied.
To satisfy the inhabitation requirement, it is not necessary that a person be present in the dwelling at the time of the unauthorized entry; however, it must be proven that someone was actually "living" in the house at that time. State v. Powers, 344 So.2d 1049 (La.1977); and State v. Hicks, 286 So.2d 331 (La.1973). A house that is lived in only part of the time may be classified as inhabited. See State v. Conn, 420 So.2d 1123 (La.1982); and State v. Mayeux, 556 So.2d 142 (La.App. 5th Cir.1990). Further, a house may be classified as inhabited even though the person living there does not intend to remain. See Conn, supra; and State v. Surtain, 529 So.2d 1375 (La.App. 5th Cir.1988). To determine whether the house was "lived in" at the time of the unauthorized entry, it is proper to consider whether the occupant deemed the house to be her place of abode and whether she treated it as such. See Conn, supra.
The record shows that on the date of this incident, the house at 7226 Liberty Street was still under Law's custody and control, and that she considered it to be her place of abode. Law testified that on October 2, 1992, she was in the process of moving out of the Liberty Street home. She stated that she began moving her things in September *746 1992. It is reasonable to conclude that her moving efforts began later in September since at the time of the unauthorized entry all of the utilities were still connected, some of her belongings were still in the house, and Law intended to return to the house the day after the incident.
On October 2, 1992, Law's relationship with the house was still that of residing tenant. From her testimony it is apparent that she perceived herself as a resident of the house, and she was also considered to be a resident by neighbors and the police officers that responded to the incident. This is evidenced by the fact that Richardson did not contact the owner of the house when she observed the suspicious activity; rather, she contacted Law. Further, Officers Glover and Toby Scott Meeler, with the Shreveport Police Department, each testified that when they arrived on the scene Law was the person that gave them access to the house by unlocking the carport door with her key.
Law testified that she was not spending the nights at the Liberty Street address when the incident occurred. However, this alone is not determinative of whether the house was inhabited. It is not uncommon for people to have two places of abode, and for both of them to be deemed inhabited for purposes of LSA-R.S. 14:62.2. See, e.g., Conn, supra; and Mayeux, supra. The situation in this case is no different. Simply because Law was in the process of moving does not mean that she no longer inhabited the house at 7226 Liberty Street. After viewing the evidence, both direct and circumstantial, in a light most favorable to the prosecution, we find that the inhabitation element has been satisfied.
We affirm the conviction, finding the evidence adduced to be sufficient to satisfy the elements of simple burglary of an inhabited dwelling, as set forth in LSA-R.S. 14:62.2.

SENTENCING
The defendant claimed in the Motion to Reconsider Sentence that: (1) the sentence was excessive; (2) the aggravating circumstances, employed by the trial court to justify a departure from the guidelines, were improper; and (3) the trial court failed to consider certain mitigating circumstances.
The Felony Sentencing Guidelines are applicable in this case because the defendant was sentenced on April 6, 1993. Acts 1991, No. 22 § 27, effective January 1, 1992; State v. Tracey, 612 So.2d 984, 985 (La.App. 2d Cir.1993). The guidelines are advisory to the sentencing judge, and no sentence shall be declared unlawful, inadequate, or excessive solely due to the failure of the judge to impose a sentence in conformity with the sentencing guidelines. La.S.G. § 103(J); LSA-C.Cr.P. Art. 894.1(A); LSA-R.S. 15:328(B); and State v. Brown, 616 So.2d 792, 793 (La.App. 2d Cir.1993). Even though the sentencing guidelines are not mandatory, the courts have been directed by the Louisiana legislature to consider them when determining the appropriate sentence to be imposed. LSA-C.Cr.P. Art. 894.1(A); Brown, supra; and Tracey, supra.
Section 309 of the sentencing guidelines provides for sentencing in an habitual offender setting. Any person convicted of a felony and adjudged as an habitual offender shall receive an enhanced penalty as provided by LSA-R.S. 15:529.1. The enhanced sentence may exceed the maximum sentence range specified in the appropriate cell in the sentencing grid. In such cases, the guidelines recommend that the court impose the minimum sentence provided by the multiple offender statute, unless aggravating circumstances justify imposition of a more severe sentence. La.S.G. § 309(B).
The sentencing court must state for the record the reasons for departure which shall specify the aggravating and/or mitigating circumstances and the factual basis therefore. La.S.G. § 209(A)(4)(b); State v. Perow, 607 So.2d 888 (La.App. 2d Cir.1992). One aggravating circumstance is sufficient to justify departure from the guidelines.
The trial court made an upward departure from the recommended six-year sentence of Section 309 for a second offender burglar, citing the defendant's continued denial of guilt after conviction, and that the defendant had lied to the court about his prior felony conviction. Although neither of *747 these factors are specifically enumerated as aggravating circumstances, La.S.G. § 209(B)(19) authorizes the court to consider "any other relevant aggravating circumstances which distinguish the case from the typical case of the offense of conviction." However, under the facts presented, neither of these reasons given by the Court are relevant, aggravating circumstances under the felony guidelines. A defendant has the constitutional right to deny his guilt after conviction, and should not be punished for exercising that right. Further, we see nothing in the record, save the judge's statement, to support the contention that the defendant lied about his prior felony conviction when the verdict was returned.[1]
For these reasons, we hold that the sentencing judge, while attempting to follow the guidelines in good faith, failed to use any circumstances recognized by the guidelines to depart upward from the recommended six years at hard labor.[2] Thus, we vacate the sentence imposed and remand for resentencing, recognizing that the sentencing judge may choose to impose a six-year sentence as recommended by the guidelines, or to disregard the guidelines altogether and impose a sentence he believes does substantial justice in the case, upon complying with LSA-C.Cr.P. 894.1.

ERROR PATENT
We have examined the record for error patent. LSA-C.Cr.P. Art. 920(2). In imposing sentence, the court shall give the defendant credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence. LSA-C.Cr.P. Art. 880. Failure to do so is error patent. State v. Allen, 571 So.2d 758 (La.App. 2d Cir.1990). The transcript shows that the trial court failed to give the defendant credit for time served. Therefore, the trial court should give the defendant credit for time served at resentencing. State v. Hughes, 587 So.2d 31 (La.App. 2d Cir.1991), writ denied, 590 So.2d 1197 (La.1992).

DECREE
For the reasons assigned, defendant's conviction is affirmed. The sentence imposed is vacated and the case is remanded for resentencing in conformity with this opinion.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED FOR RESENTENCING.
NOTES
[1] We note these were off the record discussions at that time, however.
[2] Due to our ruling on this issue, the other claims of error regarding the sentence are moot.